IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 23-cr-77 (MN) |
| DAVID MORRISON, JR. | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington, this 21st day of January 2025;

On September 5, 2024, Defendant David Morrison, Jr. ("Defendant" or "Mr. Morrison") filed a Motion to Suppress Evidence and Statements ("the Motion to Suppress"). (D.I. 31). The Government responded on September 25, 2024. (D.I. 32). Defendant replied on October 16, 2024. (D.I. 33). On November 7, 2024, the Court heard argument on the Motion to Suppress. The Court has carefully reviewed the warrants, affidavits, and the parties' filings and has considered the arguments made at the hearing. For the reasons set forth in this order, the Motion to Suppress is DENIED.

**I.   BACKGROUND**

In March 2021, the North Carolina State Bureau of Investigations opened a criminal investigation into Mr. Morrison, after receiving a referral from the National Center for Missing and Exploited Children ("NCMEC"). (D.I. 31 at 2). From 2021 until 2023, the NCMEC submitted thirteen tips to North Carolina law enforcement indicating that Mr. Morrison attempted to upload, or did upload, child pornography – also referred to child sex abuse material ("CSAM") – to various digital accounts.[1] (D.I. 32 at 2). The tips were submitted to North Carolina law enforcement

---

[1] "[E]leven of the thirteen cybertips did in fact contain child pornography." (D.I. 32 at 3; see D.I. 31, Exs. B & C ¶¶ 11-16, Exs. D & E ¶¶ 11-21).

because the only physical address linked to the accounts was a residence in North Carolina, which was the residence of Mr. Morrison's mother-in-law. (D.I. 31 at 2). In May 2023, state and local law enforcement in North Carolina referred the matter to Homeland Security Investigations ("HSI") in Greensboro, North Carolina. (D.I. 32 at 2). HSI Greensboro "had not uncovered a residence address for Mr. Morrison," but had learned that Mr. Morrison was temporarily in Delaware for work, and thus referred the case to HSI in Dover, Delaware. (D.I. 31 at 5). Shortly thereafter, in July 2023, Special Agent Sean Downey ("SA Downey" or "Affiant") of HSI Dover "learned from another law enforcement officer that Defendant's employer –trucking company – confirmed Defendant was assigned to a distribution center in Smyrna, Delaware. The employer provided the ID number of the truck assigned to Defendant, as well as the license plate number." (D.I. 32 at 3 (quoting D.I. 31, Exs. D & E ¶ 23)).

On July 27, 2023, SA Downey applied for two search warrants pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A), the Stored Communications Act ("the SCA"). (D.I. 31, Exs. B & C ¶ 1). The first search warrant was for electronically-stored information held by Google, LLC ("Google") affiliated with three email accounts associated with the cybertips. The warrant was supported by a 22-page affidavit. (D.I. 31, Ex. B). The second search warrant was for information associated with a Verizon phone number held by Synchronoss Technologies, Inc. ("Synchronoss"), and was supported by an 18-page affidavit. (D.I. 31, Ex. C). The affidavits for both warrants (together, "the SCA warrants") described the investigation into Mr. Morrisson and how the cybertips linked the CSAM to the Google and Verizon accounts. Magistrate Judge Sherry R. Fallon of the district of Delaware signed the SCA warrants on July 27, 2023. The SCA warrants were then executed that same day, although the service providers did not respond until July 30 and August 1, 2023.

On July 28, 2023, SA Downey applied for a third and a fourth search warrant under Rule 41 of the Federal Rules of Criminal Procedure. (D.I. 31, Exs. E & D ¶ 1). The third and fourth search warrants (together, "the Rule 41 warrants") were for the search of Mr. Morrison's work truck and his person. Each warrant was supported by a 28-page affidavit. Like the affidavits for the SCA warrants, the affidavits for the Rule 41 warrants detailed the investigation into Mr. Morrison and potential violations of 18 U.S.C. § 2252A(a)(5)(b), Possession of Child Pornography. Judge Fallon signed the Rule 41 warrants on July 28, 2023.

The Rule 41 warrants were executed on August 1, 2023, at the Smyrna, Delaware distribution center where Defendant was assigned to work. (D.I. 32 at 4; D.I. 1 ¶ 21). Both Defendant and his work truck were present. (*Id.*). While executing the warrants, federal agents found a "collection of child pornography" on Mr. Morrison's cell phone.[2] (D.I. 32 at 1). One of the files containing child pornography was uploaded to the cell phone on July 28, 2023, when the Defendant was in Delaware. (D.I. 1 ¶ 21).[3]

Once the search was completed, Mr. Morrison waived his *Miranda* rights and was interviewed. (*Id.* ¶ 23). In the interview, Mr. Morrison "admitted that the e-mail accounts from the cybertips are his" and "admitted that he obtains child pornography by way of receipt from other

---

[2]   The cell phone was the only device powered on during the search. SA Downey "conducted a preliminary review of [the] device and uncovered, in a locked folder within the Photo Gallery, approximately 30 images and videos depicting child pornography." (D.I. 1 ¶ 21).

[3]   While executing the search warrant for the Defendant's truck, law enforcement encountered Defendant's wife, Athena Morrison ("Mrs. Morrison"). (*Id.* ¶ 22). Mrs. Morrison consented to speak with law enforcement. (*Id.*). "[Mrs. Morrison] stated she was not surprised by the allegations against her husband" and "confirmed that he does, in fact, view child pornography and informed law enforcement of two apps on his phone that he uses to obtain his child pornography." (*Id.*).

3

individuals" through certain social media applications. (*Id.*). Mr. Morrison also stated that "he entered Delaware on or about July 20, 2023, from out of state." (*Id.*).

The Government charged Mr. Morrison via Complaint (D.I. 1) on August 2, 2023, with the transportation, receipt, and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1), (a)(2), (a)(5)(B), (b)(1) and (b)(2). On September 5, 2023, Defendant was indicted by a grand jury on those same charges. (D.I. 13). Defendant filed the instant Motion to Suppress Evidence and Statements ("the Motion to Suppress") (D.I. 31) on September 5, 2024. The government filed its response on September 25, 2024 (D.I. 32); and Defendant filed his reply on October 16, 2024 (D.I. 33). The Court heard argument regarding the motion on November 7, 2024 ("the November 7 Hearing").

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." *United States v. Bey*, 911 F.3d 139, 144-45 (3d Cir. 2018). Magistrate judges are statutorily empowered to issue warrants under the Federal Magistrates Act of 1968, as amended. The magistrate judge tasked with determining whether probable cause exists to issue a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 237 (1983). The reviewing court must pay great deference to the probable cause determination and uphold it if the magistrate judge "had a substantial basis for concluding that probable cause existed." *Id.* at 238. "'[T]he resolution of doubtful or marginal cases in this area should be largely

determined by the preference to be accorded to warrants.'" *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

If, however, a warrant is issued by a magistrate judge who lacked the the proper authority to do so, the warrant is "treated as no warrant at all – as *ultra vires* and *void ab initio*." *United States v. Krueger*, 809 F.3d 1109, 1123 (10th Cir 2015) (Gorsuch, J., concurring). Therefore, a search or seizure based on an invalid warrant is the "constitutional equivalent of a warrantless search" and is presumptively unreasonable. *United States v. Horton*, 863 F.3d 1041, 1049 (8th Cir. 2017). Any evidence obtained from an unreasonable search or seizure must be suppressed, unless an exception applies. *See Mapp v. Ohio*, 367 U.S. 643, 648-49 (1961) (discussing the justification for suppression of evidence).

### III.    DISCUSSION

Defendant argues that the suppression of evidence and statements is warranted on three grounds: (1) the magistrate judge lacked jurisdiction to issue the SCA warrants; (2) the magistrate judge improperly issued the Rule 41 warrants; and (3) the search warrants for the Google Accounts, the Verizon phone number and the person of David Morrison are overly broad. (*See* D.I. 31). The Court rejects Defendant's arguments and denies the Motion to Suppress for the reasons discussed below.

#### A.    The Motion To Suppress the SCA Warrants is Mooted

The first and second search warrants, for information held by Google and Synchronoss, were both issued under the SCA, 18 U.S.C. § 2701, et seq., which governs access to stored wire and electronic communications. Defendant argues that the magistrate judge lacked authority to

issue the SCA warrants.[4] (D.I. 31 at 4-6; D.I. 33 at 2-3). The Government, however, has represented that it "has not relied on – and has no intention of relying on – any of the data from the [SCA] warrants in its prosecution of Defendant Morrisson."[5] (D.I. 34). The Government also did not rely on any information from the SCA warrants to obtain the Rule 41(b) warrants. (D.I. 32 at 10-11 (explaining that the Rule 41 warrants were issued on July 28, 2023, but that the providers did not respond to the SCA warrants until July 30 and August 1, 2023, respectively)). Therefore, the Rule 41(b) warrants cannot constitute "fruit from the poisonous tree."

Because the government has not used and has represented that it will not use any information from the SCA warrants, the issue is moot and the Court will deny the Motion to Suppress on this ground. *See United States v. Lingala*, 91 F.4th 685, 694 (3d Cir. 2024) (holding that a suppression issue is "moot once the Government agreed not to use any of the documents taken from [Defendant] at trial.").

    **B.**     <u>The Rule 41 Warrants Were Issued Properly</u>

Defendant next argues that suppression is warranted because the warrants for Mr. Morrison's person and the Volvo truck – the third and fourth warrants – "are invalid due to having been issued without authority" under Federal Rule of Criminal Procedure (41)(b) ("Rule 41(b)"). (D.I. 31 at 6). Under Rule 41(b), "a magistrate judge with authority in the district" "has authority to issue a warrant to search for and seize a person or property located *within the district*." Fed. R. Crim. P. 41(b)(1) (emphasis added). Defendant argues that the magistrate judge lacked authority to issue the Rule 41 warrants because the affidavits failed to provide probable

---

[4] Specifically, Defendant argues the the District of Delaware is not a "court of competent jurisdiction" under the SCA; and, thus, any magistrate judge thereof lacks power to issue warrants pursuant to the SCA. (D.I. 31 at 4-6).

[5] At the November 7 Hearing, the Government confirmed that it would not be using any evidence obtained from the SCA warrants.

6

cause that both Defendant or the Volvo truck were within the district of Delaware and that Defendant had committed the offense while in Delaware. (D.I. 31 at 6-8). In response, the Government argues that the affidavits provided probable cause that Defendant and the vehicle were in Delaware, and that Defendant possessed child pornography within the district. (D.I. 32 at 8). The Court agrees with the Government.

### 1. There was Probable Cause that Defendant and the Volvo Truck were Within the District of Delaware when the Warrants Were Issued

The Court does not review a magistrate judge's probable cause determination *de novo*. Rather, the Court must determine whether the magistrate judge "had a 'substantial basis' for determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)). Here, the Court finds that "given all the circumstances set forth in the affidavit," the magistrate judge had a substantial basis to conclude that there was a "fair probability" that Defendant and the Volvo truck were in the district of Delaware when the warrants were issued. *Gates*, 462 U.S. at 238.

The 28-page affidavits attached to both Rule 41 warrants detail the background of the investigation and explain that Defendant "works as a long-haul trucker" and was "away from home often and for long periods of time." (D.I. 31, Exs. D & E at 12). As a result, law enforcement did not know where Defendant was formally residing but had learned that "Morrison was in Delaware temporarily for work." (*Id.* ¶ 10). The affidavits further support this contention by explaining that Defendant "was *currently* under contract with Anderson Trucking Services" and was "*currently* assigned to run loads for the Walmart distribution center in Smyrna, Delaware." (*Id.* ¶ 23) (emphasis added). Law enforcement also obtained additional information from Anderson Trucking Services about Defendant's assigned truck, including its identification number, make

7

and model, and color.[6] (*Id.*); *see also United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) ("Even the corroboration of minor, innocent details can suffice to establish probable cause."). Further, the affidavits state that "[b]ased on training, experience, and information provided by trucking professionals, it is common for commercial drivers to sleep in their trucks and use them as a 'home-base'" and that Mr. Morrison "routinely resides in his sleeper compartment." (D.I. 31, Exs. D & E ¶¶ 6, 23). All the aforementioned information establishes a strong probability that Mr. Morrison and the truck were in Delaware – the place of his employment and his "home-base" – at the time the warrants were issued.

Nonetheless, Defendant argues that the affidavits were required to provide more details about Mr. Morrison's employment and the truck's location, such as when the assignment started, when he would be in Delaware to run the first load, and if that had already occurred. (D.I. 33 at 5). The Court's task, however, "is not to criticize the affidavit for what it did not contain but to determine, under a commonsense, non-technical analysis that gives due deference to the initial judgment of the issuing magistrate, whether what it did contain established probable cause to search for that which it described" and where it described. *United States v. Colbert*, 605 F.3d 573 (10th Cir. 2010). As stated above, the affidavits provided a fair probability that Mr. Morrison and his truck were in Delaware when the warrants were issued. Furthermore, Defendant's proposed standard is unworkable and not required under Rule 41(b) or the Fourth Amendment. Magistrate judges are not expected to possess geographical omniscience when issuing warrants. There is

---

[6] Defendant also argues that the "tip" that Mr. Morrison was in Delaware for work was not "credited to any source" and was "equivalent to an anonymous tip." (D.I. 33 at 4). There is, however, "no requirement that an affidavit detail the manner in which the affiant gathered information" so long as "under the totality of the circumstances, the affidavit demonstrates that probable cause exists." *United States v. Brown*, 941 F.3d 1300 (5th Cir. 1991).

always a chance that a person or item is not where law enforcement or the judge assumes, and, as a result, "[t]he process does not deal with hard certainties, but with probabilities." *Gates*, 462 U.S. at 231. Consequently, the Court finds that there was a fair probability that Mr. Morrison and his truck were within Delaware when the warrants were issued.

### 2. There was Probable Cause that Defendant Committed a Crime within the District of Delaware

Relatedly, the affidavits established probable cause that criminal activity was afoot in the jurisdiction. "[P]robable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where'" the fruits of a crime may be located. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *Jones*, 994 F.2d at 1056). Here, the offense being investigated was possession of child pornography, 18 U.S.C. §§ 2252A (a)(5)(b). The affidavits detailed the investigation into Mr. Morrison as well as the CSAM obtained from the NCMEC tips. The affidavits also explain that individuals who "have a sexual interest in children" retain CSAM on their electronic devices, like cell phones, and keep these "collections" "close by." (D.I. 31, Exs. D & E ¶¶ 8). And, importantly, the affidavits state that "a review of cell site data obtained from a pen register . . . as well as from IP address information in the cybertip indicate that Morrison has engaged in the target offense while in or around his assigned commercial vehicle" while traveling from state-to-state. (D.I. 31, Exs. D & E ¶ 24). Indeed, other courts have likewise observed that "it is neither realistic nor reasonable to expect the average traveler to leave his digital devices at home when traveling." *United States v. Touset*, 890 F.3d 1227, 1235 (11th Cir. 2018); *see also United States v. Kolsuz*, 890 F.3d 133, 145-146 (4th Cir. 2018). As a result, Court finds that the affidavits established

9

probable cause that Mr. Morrison possessed child pornography (the instant offense) while in Delaware.[7]

### C. The Warrants Were Not Overly Broad

Third, Defendant argues that "[t]he warrants issued for Google, Verizon phone number 336-221-4024 and the person of Mr. Morrison (specifically the search of his electronics) are overly broad" because they were not limited to a specific time frame. (D.I. 31 at 8). Defendant avers the search warrants should have been limited to data created on or after March of 2021, the earliest date of alleged criminal activity. (*Id.* at 9). The Government, however, contends that Defendant's argument is moot because the charges do not "rely on any data prior to March 2021, so there is actually nothing to suppress." (D.I. 32 at 12). Defendant does not acknowledge this mootness argument in his reply.

The cure for an overly broad warrant is to "strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment." *United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d Cir. 2006). Consequently, the remedy Defendant seeks – excluding information created prior to March 2021 – would have no impact on this case. Therefore, the Court finds the argument to be moot and will deny the Motion to Suppress on this basis.

### D. The Good Faith Exception

Last, assuming arguendo the warrants were issued in violation of Rule 41, the good faith exception would apply. "The good faith exception prevents suppression of evidence when the

---

[7] Defendant argues that the affidavit does not allege that there were "attempted uploads that occurred from within the state of Delaware." (D.I. 31 at 3). The place where a Defendant uploads a file of CSAM or child pornography, however, is irrelevant as to whether there was probable cause to believe Defendant possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b). (*See* D.I. 32 at 10). A person may upload a file in one state and continue to possess it in another.

executing officers acted in 'good faith' or 'objectively reasonable reliance' on a 'subsequently invalidated search warrant.'" *United States v. Henry*, No. 21-3254, 2023 WL 2770817, at *2 (3d Cir. Apr. 4, 2023) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922, n.23. "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307-308. There are, however, four limited circumstances in which the good faith exception does not apply:

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Tracey*, 597 F.3d 140 (3d Cir. 2010) (quoting *Zimmerman*, 277 F.3d at 436-37).

Defendant argues that the good faith exception cannot apply here because the search warrants were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, because the investigators knew that Mr. Morrison had not been determined to be in Delaware." (D.I. 33 at 5-6). The Court interprets Defendant's argument to be that the third exception applies to the instant case, as opposed to the first exception. Regardless, the Court disagrees with Defendant.

11

First, the Court is not persuaded that "investigators knew" that Mr. Morrison was not in Delaware. Although it is true that law enforcement did not know where Defendant was formally residing, the affidavits state that law enforcement knew Defendant was in Delaware temporarily for work and was "currently" contracted to appear in Delaware on a reoccurring basis. (D.I. 31, Exs. D & E ¶¶ 10, 23). Second, the Court does not find that the "magistrate judge made an error, so obvious that a law enforcement officer, without legal training, should have realized upon reading the warrant that it was invalid and should thus have declined to execute it." *Henry*, 2023 WL 2770817, at *3 (explaining the standard for arguing applicability of the third exception) (internal quotation marks and citation omitted). Indeed, in cases where a warrant was issued in violation of Rule 41(b) – which is the thrust of Defendant's argument – "the issuing magistrate's lack of authority has no impact on police misconduct, if the officers mistakenly, but inadvertently, presented the warrant to an innocent magistrate." *United States v. Werdene*, 883 F.3d 204, 216 (3d Cir. 2018) (holding the good-faith exception applies to Rule 41(b) violations). (quoting *United States v. Master*, 614 F.3d 236, 242 (6th Cir 2018)). Law enforcement officers are not expected to know the fine, and often complicated, contours of venue and jurisdiction. *See Henry*, 2023 WL 2770817, at *3 ("Courts must recognize that law enforcement do not have an expert grip on the law . . .."). Once a warrant is signed, "reasonable officers should be expected to rely on a judge's assurance that a particular course is authorized," and not to disregard or question the magistrate judge's authority. *U.S. v. Franz*, 773 F.3d 134, 148 (3d Cir. 2014) (referencing *Massachusetts v. Sheppard*, 468 U.S. 981 (1984)). As a result, the deterrent purposes of the exclusionary rule would not be served by suppression in this case. *See Herring v. U.S.*, 555 U.S. 135, 143-145 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiency culpable that such deterrence is worth the price paid by the

justice system."). Therefore, in addition to the findings above, the Court finds that the good-faith exception buttresses its denial of Defendant's motion to suppress.

## IV.    CONCLUSION

The Rule 41 warrants were issued properly by the magistrate judge. Additionally, Defendant's argument that the SCA warrants were issued in violation of the SCA and Defendant's argument that the warrants are overbroad are denied as moot. As a result, the evidence seized and the associated statements made by Defendant shall not be suppressed.

THEREFORE, for the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress (D.I. 31) is DENIED.

*Maryellen Noreika*
The Honorable Maryellen Noreika
United States District Judge